UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAGDEEP SINGH,<br><br>                Petitioner,<br>     v.<br><br>KRISTI NOEM et al.,<br><br>                Respondents. | CASE NO. 2:26-cv-00503-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

      This matter comes before the Court on Petitioner Jagdeep Singh's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons described below, the Court grants the petition in part and denies it in part.[1]

### I. BACKGROUND

      Singh is a native and citizen of India who is currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 1 at 5. In March 2024, U.S. Customs and Border Patrol ("CBP") encountered Singh, determined that he had entered the

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

country unlawfully, and transported him to a nearby CBP facility for processing. Dkt. No. 8 at 2. On March 4, 2024, CBP issued Singh a Notice to Appear charging him as removable from the United States under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), and scheduling him to appear before an immigration judge in removal proceedings. *Id.*; *see also* Dkt. No. 9-1 at 2–4 (Notice to Appear). Due to a lack of bed space, CBP released Singh on an Order of Release on Recognizance ("OREC") pursuant to Section 236 of the Immigration and Nationality Act with reporting requirements and conditions of release, including that he not violate any local, state, or federal law or ordinance. Dkt. No. 8 at 2; *see also* Dkt. No. 9-4 at 3 (Notice of Custody Determination releasing Singh on an OREC); Dkt. No. 9-2 at 4 (noting that Singh was released on an OREC as he "does not appear to be a threat to national security, border security, or public safety"). Singh subsequently filed a claim for asylum. Dkt. No. 1 at 2.

Singh states that he "complied with the conditions on his order of release from detention and attended every ICE check-in," but "on February 01, 2026 in Blaine, Washington, [he] was abruptly taken into [Department of Homeland Security ("DHS")] custody without notice or hearing." *Id.* at 5. For their part, Respondents state that on February 1, 2026, CBP stopped Singh in his vehicle in Sumas, Washington after CBP "observed [him] driving towards the United States-Canadian border and then driving away from the border a few minutes later" and "suspected [him] of being involved in illegal border activities." Dkt. No. 8 at 2; *see also* Dkt. No. 9-3 at 4. At that time, CBP "conducted an immigration interview and records checks, determined [that Singh] was present in the United States in violation of immigration law, and arrested him." Dkt. No. 8 at 2; *see also* Dkt. No. 9-3 at 4–5.

On February 2, 2026, DHS issued Singh a Warrant for Arrest and an Order to Detain, Dkt. No. 9-6 at 2–3, and a Notice of Custody Determination, which stated that he was being detained by DHS, Dkt. No. 9-7 at 2. Singh acknowledged receipt of the latter document and declined to

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

request that an immigration judge review the custody determination. *See id*. The same day, Singh was transported to the NWIPC, and on February 24, 2026, his OREC was cancelled for "failure to comply with his conditions of release." Dkt. No. 8 at 2; *see also* Dkt. No. 9-8 at 2 (order cancelling OREC). Singh has not had a bond hearing. Dkt. No. 8 at 3.

Singh filed his petition for habeas corpus on February 11, 2026. Dkt. No. 1. At that time, he stated that he had been "detained for nearly a week." *Id.* at 5. He asserts a single claim under the Due Process Clause of the Fifth Amendment. *Id.* at 9. He seeks (1) immediate release, (2) an order permanently enjoining his "re-detention during the pendency of his removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that [he] is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks"; (3) an injunction "[e]njoin[ing] Respondents from placing GPS ankle monitors on [Singh] upon his release, absent clear and convincing evidence that [he] is a flight risk or danger a danger to the community and that no other alternatives would mitigate those risks"; (4) an order "[d]eclar[ing] that [his] re-detention while removal proceedings are ongoing without first proving an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment"; and (5) attorney's fees and costs. *Id.* at 10–11. Respondents[2] filed their return on February 25, 2026. Dkt. No. 7. Singh filed his traverse on March 2, 2026. Dkt. No. 10. The petition is now ripe for review.

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 3

## II. DISCUSSION

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v.*

*Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

### B.  Singh Has Established a Due Process Violation

Like many petitions before the Court, Singh's petition ignores the statute to which he is subject, and instead essentially insists that due process demands the same procedures no matter which statute applies. *See, e.g.*, Dkt. No. 1 at 6–9. But the Ninth Circuit has rejected such a proposition, and this Court does too. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Id.*; *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

    1. <u>Process Required by Statute</u>

      (a) *8 U.S.C. § 1226(a) is the Applicable Statutory Authority*

Respondents argue that Singh is subject to mandatory detention under 8 U.S.C.

§ 1225(b)(2)(A) because his "re-detention on February 1, 2026, due to suspected involvement in illegal border activities, properly falls under 8 U.S.C. § 1225(b) as an enforcement action against an inadmissible alien." Dkt. No. 7 at 7. They further argue that Singh's "OREC revocation was discretionary under 8 C.F.R. § 236.1(c)(9) and does not require evidence of a specific violation; it may occur at any time, including when an alien is encountered during a lawful operation." *Id.* Singh disagrees, arguing that DHS "expressly exercised discretionary custody authority under INA § 236" when it released him on the OREC, and "[h]aving exercised discretionary custody authority under § 1226(a), DHS cannot retroactively avoid the consequences of that determination by re-labeling [his] detention as arising under § 1225(b) absent a new inspection or entry event." Dkt. No. 10 at 3. According to Singh, his February 2026 arrest does not change the applicable detention authority because when he was arrested, he was "already in pending § 240 removal proceedings and had previously been released under § 236 authority," so "detention authority flows from § 1226—not § 1225." *Id.* at 3–4; *see also id.* at 4 ("Singh's February 2026 arrest resulted in cancellation of his previously issued OREC, issuance of a new Form I-200 and Form I-286, and a new custody determination," which "are hallmarks of discretionary enforcement under § 1226—not automatic detention under § 1225(b).").

      8 U.S.C. § 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit," *id.* § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That express exception to detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300. Respondents candidly acknowledge that courts in this District have rejected their argument that noncitizens in Singh's position are detained pursuant to Section

1225(b). Dkt. No. 7 at 8 (citing *Balwan v. Bondi*, No. 2:26-cv-00248-LK, 2026 WL 497098, at *4–5 (W.D. Wash. Feb. 23, 2026) and *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. Sept. 30, 2025)). Respondents also note that "the facts [here] are like the facts in *Balwan*." *Id.*

This Court agrees with the reasoning of *Rodriguez Vazquez* and countless other courts across the country: "The plain text of section 1226(a)" implies that the "default discretionary bond procedures in section 1226(a)"—rather than mandatory detention procedures under 8 U.S.C. § 1225(b)—apply to noncitizens who are "'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) but have not been implicated in any crimes as set forth in section 1226(c)." *Rodriguez Vazquez*, 802 F. Supp. 3d at 1322–23. "[I]f the Court were to adopt the reading of section 1225 advanced by the [Respondents], it would render significant portions of section 1226(c) meaningless," including the recently enacted Laken Riley Act, which "carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority." *Id.* at 1324–25. Furthermore, had Congress had wanted Section 1225(b) to have the effect urged by the government, "it could have said so in words far simpler than those that it wrote." *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *12 (5th Cir. Feb. 6, 2026) (Douglas, J., dissenting (quoting *Biden v. Texas*, 597 U.S. 785, 798 (2022)).

Additionally, "where a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)). The government has treated Singh as subject to discretionary detention under 8 U.S.C. § 1226 from his arrival in the United

States until his February 1, 2026 detention. Specifically, after Singh entered the United States in March 2024, he was released on an OREC pursuant to section 236 of the Immigration and Nationality Act, Dkt. No. 9-4 at 3, which is codified at 8 U.S.C. § 1226, *see Diouf v. Mukasey*, 542 F.3d 1222, 1227 (9th Cir. 2008).[3] These facts demonstrate that Singh's detention is governed by 8 U.S.C. § 1226 rather than 8 U.S.C. § 1225.

As noted above, Singh does not discuss the adequacy (or lack thereof) of the procedural safeguards in Section 1226(a) and its implementing regulations, and absent any argument to the contrary, the Court assumes that these safeguards suffice for due process purposes. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). The Court addresses those safeguards below.

*(b) Procedures Required under 8 U.S.C. § 1226(a) and Implementing Regulations*

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

---

[3] On the Form I-862, DHS selected the checkbox indicating that Singh is "an alien present in the United States who has not been admitted or paroled" and not the checkbox designating him "an arriving alien." Dkt. No. 9-5 at 2.

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Id.* at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a

showing of changed circumstances both where the prior bond determination was made by an immigration judge and where"—as here—"the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

      2. <u>Due Process Requirements</u>

Singh contends that his Fifth Amendment rights were violated by his re-detention without "written notice and a hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk." Dkt. No. 1 at 9–10. He also asserts that prior to his re-detention, ICE did not assess whether his detention was justified. *Id.* at 5; *see also* Dkt. No. 10 at 10 (arguing that "[t]he February 1, 2026 Form I-213 reflects only suspicion of possible border activity" but "does not establish a formal violation of any OREC condition prior to revocation"). As described above, he seeks release and an injunction against re-detention, among other relief, on this basis. Dkt. No. 10 at 10–11. Respondents argue that the OREC revocation was "discretionary under 8 C.F.R. § 236.1(c)(9) and does not require evidence of a specific violation; it may occur at any time, including when an alien is encountered during a lawful operation." Dkt. No. 7 at 7 (citing 8 C.F.R. § 236.1(c)(9)). They also argue that no bond hearing was necessary, as Singh is detained under Section 1225(b). *Id.*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the

Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge. Id.* at 1179–80.

*(a) Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 11

Here, after briefly detaining Singh in March 2024, DHS released him on his own recognizance "pending a final administrative determination in [his] case[.]" Dkt. No. 9-4 at 3. Until he was re-detained in February 2026, Singh had spent nearly all of his two years in the United States released on the OREC and had obtained authorization to work in the United States. Dkt. No. 9-3 at 5. Singh is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

*(b) Procedural Protections*

To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Singh has a weighty private interest in remaining out of immigration detention. *See Morrissey*, 408 U.S. at 482. Despite his liberty interest being "indeterminate" under an OREC, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Singh has an interest in the government adhering to the requirement not to re-detain him absent (1) a revocation made by an appropriate official and (2) a material change in circumstances. This factor favors Singh.

Turning to the second factor, Singh argues that "[d]ue process does not permit the government to strip [him] of his liberty without written notice and a hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk." Dkt. No. 1 at 9. The government's stated view is that noncitizens previously subject to discretionary detention under 1226(a) are now subject to mandatory detention with no right to a hearing under section 1225(b)(2). Dkt. No. 7 at 7 ("Section 1225(b) imposes mandatory detention[.]"). This erroneous position appears to have undergirded the decision to detain Singh. Dkt. No. 8 at 2. Respondents do not argue that Singh's OREC was revoked by an official authorized to do so. *See* Dkt. No. 9-8 at 2 (revocation of OREC signed on February 24, 2026 by someone whose name and title is not identified; signature illegible); 8 C.F.R. § 236.1(c)(9) (listing officials who may revoke an OREC). Nor have Respondents even attempted to establish a change in circumstances sufficient to justify re-detention; all that have identified is that Singh was "suspected of being involved in illegal border activities" because he drove towards the Canadian border and then drove away from it a few minutes later. Dkt. No. 8 at 2; *see also* Dkt. No. 9-3 at 4. These unsubstantiated suspicions do not show that Singh "fail[ed] to comply with conditions of his release." Dkt. No. 9-8 at 2. The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained. *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations"). Because the above-described procedures operate to "prevent[] arbitrary revocations

and ensure[] that detention decisions rest[] on individualized assessments of changed circumstances rather than categorical assumptions," *Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *5 (W.D. Wash. Oct. 7, 2025), adherence to the government's procedures would have mitigated the risk of erroneous deprivation. *See also Saravia*, 905 F.3d 1137 (upholding district court's classwide preliminary injunction requiring a prompt hearing for noncitizens suspected of gang activity at which the government would be required to demonstrate that changed circumstances justified arrest and detention). This factor weighs in favor of Singh.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, that interest is not impermissibly burdened by requiring the government to follow its own procedures regarding OREC revocations. This factor too weighs in favor of Singh.

Under *Matthews*, the Court finds that Respondents failed to provide Singh with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful.

## C. The Court Denies Singh's Request Preventing Re-Detention or Setting Conditions on Release

In addition to immediate release, Singh requests an order "permanently enjoin[ing] his re-detention during the pendency of his removal proceeding absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that [he] is a flight risk or danger to the community and that no alternatives to detention would mitigate those

risks[.]" Dkt. No. 1 at 10–11. Singh also requests an order "[e]njoin[ing] Respondents from placing GPS ankle monitors on [him] upon his release, absent clear and convincing evidence that [he] is a flight risk or danger a danger to the community and that no other alternatives would mitigate those risks." *Id.* at 11. Respondents oppose these requests, arguing that due process does not require the government to bear an elevated burden of proof and that "habeas corpus under 28 U.S.C. § 2241 addresses current unlawful detention, not prospective conditions of release or hypothetical future custody." Dkt. No. 7 at 10–11. According to Respondents, Singh's ankle monitor request is "premature and not ripe for adjudication, as it seeks relief for conditions not yet imposed." *Id.*

Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Nowhere in Singh's petition does he allege that re-detention is likely if he were to be released on bond, that such detention is likely to occur without compliance with the government's regulations or policies, or that Respondents will place GPS monitoring devices on him without justification. Without argument or evidence that those outcomes are likely to occur, Singh's requests constitute nothing more than a "mere possibility" that do not entitle him to relief. *Id.* (citation modified). For these reasons, the Court denies his request for injunctive relief regarding the standard of proof at a potential future, post-release re-detention hearing, or regarding an ankle monitor if he is released.

### III. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1. Respondents shall immediately release Singh from custody on the terms of his most recent OREC or other terms consistent with Section 1226(a);

2. The parties shall file a Joint Status Report by March 10, 2026, confirming that Singh has been released;

3. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 9th day of March, 2026.

Lauren King
United States District Judge